Good morning, your honors. Jessica Earle from the Federal Public Defender's Office. On behalf of Mr. Byron Montijo, may I please reserve three minutes of your time to address the following witnesses. Yes. This morning, your honors, we're asking the courts to focus on two specific issues. First, that a message from Mr. Montijo that he wanted to see the minor again does not constitute federal enticement. Second, that the transportation of a minor that occurred wholly within Puerto Rico from one municipality to another does not constitute a federal offense. First, as to the enticement statute, the communication between Mr. Montijo and the minor female on the messaging app Kik does not constitute enticement. Thus, the district court erred in denying Mr. Montijo's Rule 29 motion as to this count. We are relying here on a witness's recollection of a message that occurred 18 months prior in order to substantiate a critical element of a very serious federal offense. What was the actual conversation in that message? There was no actual evidence of the conversation produced in trial. The minor testified that what she could remember was we discussed nothing in particular, only that he wanted to see me again. Is that the entire evidence that the government presented on that point? Yes, your honor. Thank you. Now, the enticement statute carries with it stiff penalties for defendants, and thus enticement must require a specific, more culpable behavior by the defendant, more than just mere communication with the minor. And as I mentioned to the judge, the evidence here was that testimony by the minor that over an alleged six-day span where they communicated on Kik, he said, I want to see you again. The enticement element of the statute here is of the utmost importance of the court's focus because Congress, in drafting 2422B, has decided that the type of the defendant who would engage in the persuasion or enticement of a minor is more culpable and deserving of far greater punishment than those who perhaps engage in or even set up an underage sexual encounter with an underage person. Well, let me ask you this. Because there was, whatever the flattery was that was going on at the hotel room during the first encounter, there was, I want to see you again. There were multiple instances of the texting. And the question is, cumulatively, is that enough for us to conclude that that would, a reasonable inference would be enticement? Well, Your Honor, as far, to address one specific point, the text messages, there weren't any recovered text messages between the minor and Mr. Montijo. Right, but there was testimony as to numerosity. I'm not aware of that. The only thing that she testified to was that they communicated for a period of six days. But regardless, Your Honor, we would submit that, you know, Didn't she say that there were multiple communications? She said that She said that there were 50, but she said that there were multiple over the six-day period, didn't she? She testified that she and Mr. Montijo started their own chat on Kik, and then she testified that the four of them started a group chat on Kik, and her testimony was that they communicated throughout the six days. So I guess we could make a reasonable inference that, yes, there was multiple communications, but a number or how frequent or how often, there was no testimony as to that. But to answer Your Honor's question, can we look to these other acts in a cumulative thing? And we would suggest that, first, all these communications that existed, they were in-person communications, so it doesn't constitute federal enticement. Notwithstanding, we don't think the court needs to bifurcate the in-person communications versus the interstate commerce communications in this particular case. We think even if the court were to consider the cumulative evidence, and we would suggest is still minimal, it still doesn't rise to the level of what should constitute enticement under the federal statute. And that brings me back to the argument I was making initially. Congress has made the choice to criminalize the persuasion, not the performance of the sexual acts themselves. If we add to that the disparity in the age. Yes, Your Honor, and there is an age difference in this case, but we argue that this is not a strict liability statute. So there may be... Putting it all in the cumulative pot. That would go into the cumulative pot. And we would stress that the focus of the court should be on what constituted the interstate commerce persuasion, which in this case was minimal. Yes, we can look to the overall factors, but even if we do, that falls far short of what enticement should carry. Enticement means to learn... to only whatever evidence there is about what was said during the communications, and we can't put it all in a pot? No, Your Honor, we're not suggesting that. Like I said, we don't need the court to bifurcate between the interstate commerce communications and the in-person communications, although the focus should be on the interstate commerce. But we think even if the court were to consider the non-interstate commerce communications, the face-to-face interactions, and the testimony that had to do with that, it still wouldn't rise to the level of what the federal enticement statute requires. Enticement's not defined... You saw the other couple having sex at the hotel, right? Yes. And then there is the hotel, the description of the hotel, how it's set up, how you pay, the hours. Yes. So it certainly is a reasonable inference that that's a rendezvous hotel. Yes, Your Honor, and I don't think that that was ever disputed by Mr. Montijo at trial or in the Rule 29 arguments. Our argument goes to the point of what enticement requires, the luring, the inducement, the tempting. And the courts look to whether the defendant, through his actions, overcame the will of the minor, whether he somehow, through his persuasion or enticement, bent her will. And thus, though the focus is on the defendant's actions, by the simple meaning of what enticement or coercion means, we also have to look into whether the minor's volition in these cases. And here, what we do know is that on November 24th, which is the day of the first encounter, this minor made plans with her friends to skip school. She went to a meeting place to meet two men she'd never met. She had never spoken to, seen, met Mr. Montijo. She testified they weren't friends on Facebook. She had no idea who he was. She was predisposed to engage in the conduct at issue and voluntarily went on November 24th without any, not even face-to-face communications with the defendant. So there's nothing in the record to establish that Mr. Montijo compromised her volition, however misguided it may have been. And we do not mean to minimize this is a very serious offense and that a person in their 20s had sex with a minor, and that is a criminal act. And he could have been persecuted under separate state crimes, but the government chose to do a federal enticement. And our submission to the court is what transpired in this case certainly doesn't rise to the level of enticement that this court has found in cases such as Duenos and Davila Nieves. If the court has no further questions about the enticement, I'd like to briefly turn the court's attention to the transportation statute, which was the other statute he was convicted of on multiple counts. Because Mr. Montijo's transportation of the minor occurred wholly within Puerto Rico, from one municipality to another, it is not a criminal act covered by 2423A. Maldonado-Burgos remains good law, and so we need to determine whether the logic applied in Maldonado-Burgos applies to this section of the Mann Act, 2423. Well, doesn't, I mean, the problem is that little tricky word in, which was absent in the other one? I believe the, yes, Your Honor. In, that word in, and so why isn't that the addition of the word in the commonwealth and expression of Congress's wishes, which is what we said in Maldonado that we needed to start with, trying to figure out, had Congress known the evolution of Puerto Rico? Is Your Honor's question as to the preposition in or as to the word commonwealth? In the commonwealth. In the commonwealth. It was in the commonwealth territories, it says. Right, so the addition of that word or those two words in the commonwealth in the 1998 amendments, as Your Honor mentioned in the reply to the dissent on Bonk, mentioned that can cut both ways. And so first we need, when we do statutory interpretation, to look at the plain meaning of the word commonwealth or in the commonwealth. Commonwealth has no definition in the statute, in the Mann Act, so we have to look to whether it's defined anywhere else, and it has a multitude of definitions throughout the United States Code. And the commonwealth is referred to as the commonwealths of Virginia, Kentucky, Pennsylvania, Massachusetts. Sometimes we see the commonwealth of Puerto Rico. Sometimes we see the commonwealth of the Mariana Islands. Commonwealth of nations. Commonwealth of nations. In fact, in the Federal Relations Act, the act that gives Puerto Rico more sovereignty, it's not even defined as the commonwealth there. It's just defined as Puerto Rico. So given that there's no clear definition of it. Because I'm really struggling with this, as you can imagine. So the problem is that we've got the commonwealth. In our circuit, we have the commonwealth of Massachusetts. But the other part of the statute talks about within the state and states. And even though Massachusetts, Virginia, Pennsylvania are commonwealths, they're also states. So to the extent that there's any ambiguity, there's no doubt that they're states. Right. And I would point. Following that line of discussion, it also says territories, doesn't it? It does, Your Honor. So if it's not a ‑‑ I agree with you, or I don't know if I agree with you, but I have some doubts as to whether commonwealth has sufficient meaning for me anyway. Because it could be several things that are obviously not covered. In state, obviously, we're not talking about. But it does cover territory. So, therefore, why isn't that sufficient? Your Honor, I would suggest that as this court applied the logic in Maldonado-Burgos to look to what are the reasons that commonwealth is included, even if we're unclear as to the definition. The record is there. There's nothing to indicate. Senator Coats added this word, commonwealth, at the very end of the 1998 congressional hearings with no debate on the record. He just threw the word commonwealth in there. So, we think that there's no clear policy reason. There's no indication. Maybe so as to the word commonwealth, but you didn't answer my question. Territories are included, and Puerto Rico is obviously a territory. Yes, Your Honor. It is. Well, the word commonwealth, when the Senator added it in in 1998, I guess that sort of strengthens my argument. We don't know what Puerto Rico is if it is a territory or a commonwealth. So if we define it as a territory, as Your Honor mentions, then the logic in Maldonado-Burgos would apply. How I define it is the Supreme Court has decided several cases recently calling Puerto Rico an unincorporated territory. Yes, Your Honor, and that's where I'd like the court to really apply the logic in Maldonado-Burgos because, as the opinion pointed out, those questions before the Supreme Court dealt with constitutional interpretation. Here we're asking, I see the court, my time's up, if I could just finish this point. We're asking for statutory interpretation. Whether the court of analysis that the court used during Maldonado-Burgos applies to this section of the Mann Act, despite the fact that the word commonwealth was added at the last second with no policy statistics or other information that would survive the rational basis Maldonado-Burgos calls for. I'm trying to be clear. Even if Maldonado-Burgos doesn't apply, which is a questionable argument, assuming it doesn't, why doesn't the part of that statute that covers territory sufficient? Because I think, well, if the court's question is why territory wouldn't, we would say that the passage of the Constitution in the 1950s, we look to see whether Puerto Rico should be treated as a state under the Federal Relations Act. And in this case, in the Mann Act, it should be treated as a state for the analysis applied in the court of analysis, whether or not we define it as commonwealth or territory. And that's the argument that is made by the court in Maldonado-Burgos, when it was just territory in 2421. With no further questions, thank you. Good morning. May it please the court, Julia Maconiatis for the United States. The government in this case presented sufficient evidence that Montijo knowingly used kick to persuade the minor to return to the motel and have sex. When we look at the evidence as a whole here, just like Your Honor stated, we look at all of this cumulative evidence, and it showed the use of kick was for the purpose. In detail, not just territory. What exactly did you claim forms a big area of evidence? Yes, Your Honor. Before we get to that date, the second outing, the second rendezvous, the first rendezvous puts everything in context. We have two gentlemen who started a conversation with a 13-year-old minor, and they knew this first 13-year-old minor because she was a family. The co-defendant, CPP, the first minor, knew the co-defendant Melendez because they were family. They form a chat, and not only did minor two but minor one also testified about this, that they formed a chat and they planned to go to a motel. As planned, they go and they pick them up at school next to the food truck, and they get into the car with these two gentlemen. Prior to getting into the car with these two gentlemen, the two gentlemen text, and we have the text where one of them says, What should I wear? I'm horny this morning. So this goes to show the intent of picking up these two minors and taking them to the hotel. They get them, and they take them to a housing project where they offer two 13-year-old girls smokes and drinks. Then they transport them to a motel, a motel that it's not a typical motel maybe that you see in the States. It's a motel where you drive in to a garage. No one can see you get out of the car. No names are taken. Only your license plate is taken. It's an occupancy of two persons per room, and you pay $20 to have the room for six hours. The jury was able to see the type of room where it was, where it was just a double-sized bed, lawn chairs, and mirrors all over the wall. Couple number one, the minor testifies, goes into the room and has sex. Couple number two, which is Mr. Montijo and DPP, they go into the room and he tells her, in typical grooming behavior, you don't have to do anything you want to, but you have beautiful eyes. You have beautiful hair. When couple number one gets out of the room, they go back and drop the girls off. That afternoon, you have Mr. Montijo talk to his co-defendant asking, have the girls said anything? They start a second chat where he says, I want to see you again. Admittedly, the government doesn't have the transcripts of these chats, but he said, I wanted to see you again, and the minor testified that she interpreted that to be a second rendezvous to the hotel,  but prior to that, they stop and ask them if they want drinks or smokes. Is there anything, any testimony that he ever mentioned sex to her? No, Your Honor. No, Your Honor. She interpreted that as going to the motel, and the jury was able to ask. At trial, was she asked about specifically if he said anything to her about sex? No, Your Honor. That question was not posed, but when we look at what the statute requires, there's four different verbs, none of them which are defined by the statute, so we use the common definition. And one of them is persuade, and the other is induce. And courts have defined persuade as to win over, to appeal to one's reasons or feelings. By arguing or presenting a case or whatever it is. Excuse me? Doesn't that imply that you have to make some kind of a mention? Argument as to the goal you seek. Or to stimulate the occurrence or the cause of seeing her again. She testified that she believed it was to go to the same motel. If it was not to go have sex, why would she have believed that it was to go to the same motel where they would pay the same $20 for six hours, and when, indeed, they went and they had sex? I mean, isn't it equally plausible that nothing happened the first time, and she thought they were going back for chat again? I mean, why is it more plausible that they just weren't going to go back and talk some more? Your Honor, well, the jury could have made that inference, but they chose, given the facts here, that the inference was when you look, that they go to a motel when they're offering these two young minors smokes and drinks prior to go to the hotel. When they're taking them out of school, where they have all of the resources to be able to do this, that at some way that they're appealing to their mental state and saying, yes, let's engage in this criminal sexual activity. And that is what the jury was able to see from the cumulative effect of all of the evidence presented. Was there any evidence about whether this alleged victim had conversation, had knowledge that the other person had had sex on the first occasion? I believe she stated, well, the first victim did state that she had sex with the individual. It was on the second time where it was this second victim that walked in and saw Mr. Melendez with the second victim. But I do not believe the record states that. But I can definitely double check and write a 28-J if this Court so desires. States what? States if she knew that the victim, number one, had sex with the co-defendant on the first time. Okay. Now, moving to the issue of statutory interpretation, the District Court properly denied Mr. Montijo's motion to dismiss. Here, the plain text of Section 2423A, taken together with the legislative history, illustrate that transportation solely within Puerto Rico is a violation of Section 2423A. Now, when we look at Section 2423A, it criminalizes two different types of transportation. The first type of transportation is the crossing of a line per se, interstate or foreign transportation. But then there's the second type of transportation. That's transportation in a commonwealth, in a territory, or possession. Now, by way of history, this Court first had the opportunity to look at that statute in 1945 in a case called Crespo. And there, the Court had no problem determining when that statute was only limited, the second type of transportation to territory and possession, that Puerto Rico felt squarely within that definition. Seven years later, Congress passed Public Law 600, which allowed Puerto Rico a greater degree of self-autonomy in the enactment of the Puerto Rican Constitution. Nothing, however, has changed Congress's intent that travel wholly within Puerto Rico should not be encompassed in that Mann's Act. And the amendments to the Mann's Act, to the Mann Act, solidified that. You're arguing against the President and Maldonado. I mean, you're still arguing against our recent decision. Essentially, in the brief, you think it was decided incorrectly, but the government didn't appeal that to the Supreme Court. Your Honor, two things. In the brief, the government maintained its position that respectfully we believe that Maldonado Burgos was not decided. And just as a footnote, we don't believe that we need to- Was not decided correctly. Was not decided correctly, I'm sorry. And in a footnote, but as a side note- Why didn't you appeal? Well, as Your Honor may know, the government doesn't have an ability to appeal to the Supreme Court as a matter of right. It needs to be approved by the Solicitor General, and we did not receive that approval, and that is why that the case did not- there was no application for a writ of cert in that case. But in this case- All right, so we got the precedent. Yes, we have the precedent, but the precedent, Your Honor, is limited to 2421. And there's two footnotes in that precedent which show that 2423A is a whole different animal. Not only is the holding, as Your Honor described it, a narrow one solely to 2421, but even if we were to use the method of analysis in Maldonado Burgos, we still have the answer that transportation within Puerto Rico is encompassed in 2423A. And why do we have that? The first stepping stone in statutory interpretation is to look at the plain language of the statute. And here it is the government's contention that the plain language carries the day. Here we have Section 2423A, which differs from Section 2421 because it has the word commonwealth. And that is one main difference that this Court did note was apparent in the footnotes in Maldonado Burgos. And how did commonwealth come about? Well, we know that it is the 1998 PROTECT Act, which was called the Protection of Children from Sexual Predators Act. It amended 2423A and a plethora of other statutes that dealt with children. It imposed harsher penalties on the predators of children. Now, as this Court also noticed, CRISPO never addressed the application of children because at that time the statute hadn't been divided in two. But what we have is Congress clarifying that clearly by adding the word commonwealth, it meant to encompass Puerto Rico. It went out without any discussion. And while appellants hang their hat that there isn't anything on the record. Well, following up with Judge DeWay, why would that be necessary if Puerto Rico is a territory? Well, Your Honor, quite frankly, it's a clarification. It's a clarification that even though Puerto Rico was a territory, which something was argued by the government in Maldonado Burgos, but Congress at that time wanted to clarify that if indeed because- Why did it need clarification given CRISPO? Well, given CRISPO, because there's other First Circuit opinions that had noted that Puerto Rico's status is not an easy question. And at that point, although now we have Sanchez Valle, which clearly and unequivocally says that Puerto Rico is constitutionally a territory, we have PROMESA, where the Court specifically used Puerto Rico as a territory. But back then, when we look at a lot of the cases that dealt with statutory interpretation, it seemed that Public Law 600 was a territory plus. And a lot of the cases of this very circuit didn't go so far to say that it's a state, but it said that it was frothed with uncertainty. I believe that's what it was used in the past. So this is a clarification. And to support that, Your Honor, when we look at- The bottom line statement is you're asking us to find that the residents of Puerto Rico are incapable of self-governance for local affairs when it comes to policing. No, Your Honor, that's not what the government is asking to do. In cases of statutory interpretation, using what this Court has said, even in the beginning of Maldonado and Burgos, or in Justino- You're asking- We do treat the Commonwealth of Puerto Rico as a state for certain purposes. And usually- The states clearly have a right to- The states, not Puerto Rico. The states have a right to exercise their police powers. That's one of the rights that has always remained with the states. And so the question would be, why would we say that the states can exercise their police powers over the residents and of crimes occurring solely within their jurisdiction, but Puerto Rico is saying statutorily should not be allowed to do that because of man. Yes, Your Honor, because the proper framework of this analysis of statutory interpretation is whether the Man Acts framers, aware of Puerto Rico's current status as a result of the Federal Relations Act and the enactment of the Constitution, would have intended to encompass travel solely within Puerto Rico. And when we look at that amendment, amendment in 1998 of the PROTECT Act, the answer is an outstanding yes. Why? Because in the PROTECT Act, what Congress was wanting to do was widespread protection for child sex victims. It was not carving out exceptions. And then we also have to look at what was going on at that time, at 1998. Now, a lot has been said that there isn't anything on the record as to why Commonwealth was added at that point. But if we take judicial notice of what was occurring, less than a month prior the Senate approved Resolution 279, which was allowing a plebiscite for Puerto Rico self-determination. So Puerto Rico's status and what the residents of Puerto Rico wanted was on the Senate's mind. So three weeks later, when Daniel Coats states, let's add Commonwealth here, clearly that can be interpreted that it is including Puerto Rico. And Commonwealth was added in two sections, Your Honor, not just 2423A. In the portion... But why is it Commonwealth of Puerto Rico rather than Commonwealth? Your Honor, that is unclear from the record. Well, it makes everything unclear. And I'm wondering how that can be used as a basis for a criminal prosecution. Commonwealth means a lot of things. Yes, Your Honor, Commonwealth means a lot of things. But when we look in the statutes and specifically where they were placed, in 2423A and 2426, Congress's intent is clear. Now, if I may, in 2426... Yes, Your Honor. ...a side issue. I would really like to hear your argument again of why you don't think that the reasoning in Maldonado-Burgos as to the flexibility of local interstate interests, the intra-Puerto Rico activities in this area can be prosecuted. Yes, Your Honor. The government believes that even if Commonwealth... You're taking us out of this territory and going back to Maldonado-Burgos land. But the government believes that the word territory would have been sufficient even after the enactment of the Puerto Rico Constitution and Public Law 600, partially because of the Savings Clause. Now, if I may finish my train of thought. Why is this? Partially because of the Savings Clause. With the enactment of the Federal Relations Act, Congress put a Savings Clause, which they stated that Congress need not rewrite all statutes to amend them to include Puerto Rico, because with Public Law 600, they gave Puerto Rico more autonomy, but the relationship between the United States and Puerto Rico remained the same. So they didn't have to go in and rewrite everything. And that is one of the reasons why the government argued that 2421 also encompassed travel within Puerto Rico, although we are cognizant that Maldonado-Burgos now holds differently. Well, so what are we going by at this point? Is Maldonado-Burgos the law of the circuit? And even though it's a different statute, it's basically the same issue. Your Honor, Maldonado-Burgos by its very terms was limited to that statute, and it is the government's contention that even if we use the Maldonado-Burgos test-citing code of the law where you need clear policy reasons or specific evidence, that we do have them in this case, because we have the addition of the word Commonwealth, and we also have the legislative history of 2423A, which shows that Congress wanted expansive coverage for protection of minors against sexual predators. Now, if I may, I know I'm grossly over my time, but just may I, Chief Judge, explain why the use of Commonwealth in 2426 supports why the use of Commonwealth in 2423? Yes, take another minute. Okay. In the PROTECT Act, Daniel Coates added the word Commonwealth in two sections. The first was the Mann Act, in that second type of class of transportation within any Commonwealth territory or possession. Now, the Commonwealth's territories and possessions that aren't states, that phrase intends to constitutional territories. For example, Puerto Rico, Guam, the Northern Mariana Islands. That's why there's that separate within language, the second type of transportation. But when Senator Dan Coates wanted to include Commonwealth as a state, he did. 2426 provides heightened penalties for repeat sex offenders that have state convictions, and he used the definition state in that section specifically to include the United States, the District of Columbia, and any Commonwealth state or territory, because they wanted anybody who had a previous conviction to get heightened penalties. When they wanted to include the word Commonwealth as a state, they did. And the fact that they didn't do it in 2423A is a clear policy reason that they wanted transportation within a Commonwealth to be prohibited by 2423A. Thank you for letting me explain that point. Yes, Janice. I'm going to briefly address just a couple quick points as to 2422. I still have to ask the court, where is the persuasion? Where is the enticement? Even if we look at this in a vacuum, in analyzing all the facts that the government asked, I want to clarify, I was the trial attorney in this case, and there was a bit of misrepresentation of testimony that was given. First, the conversations that occurred prior to November 24th did not involve Mr. Montijo. That was clear from the record. It was Mr. Melendez, the co-defendant, and the first two minors. Secondly, you don't have to do anything you want to do, but you have beautiful eyes and hair. It was not in one single sentence that that way, and it's not clear when those statements were made, if you read through the transcripts of the testimony. Third, that Mr. Montijo was the one that said that he wanted to do a rendezvous. They used the word vuelta in Spanish, to go out again. Again, that was in the group chat, and it's not clear who said that, whether it was even one of the girls who said that. The minor testified that she knew what the word vuelta, she knew what the word taken outing meant. So just to clarify that, and I still say, even with those three things clarified, we still have to ask, where is, as Judge Torreya asked, the enticement, the act of Mr. Montijo bending the will of the minor? As to the 2423A, I want this court to be clear on Mr. Montijo's position, that there is no doubt that the 1998 amendments were to be tougher on predators, and were to protect minor children. There is no doubt in the congressional record the penalties were stiffened substantially, but the government offers no plausible rationale why Congress meant to punish persons who commit this offense wholly within Puerto Rico, but not as persons who would engage in this in any of the states. And I want to clarify, in preparing for this, I checked PACER, and I could not find a single instance where this kind of behavior, 2423A, is prosecuted in the Commonwealth of the Northern Maryland Islands, which is a commonwealth, in the Virgin Islands, in Guam. It simply isn't done there. It's only done here in Puerto Rico by the federal prosecutors in this jurisdiction. So to say that they want to, that there is this thing that we want to protect transportation wholly within territories or commonwealths, it's not done in any of the other territories or commonwealths just in this jurisdiction. Your Honors, with nothing further, I have about 30 seconds left if you have any other questions. So I guess that's one of the, there haven't been any more case law generated if they only do it in Puerto Rico. And that would be true, Your Honor. And I would also point, though, that these kind of cases only began being prosecuted in Puerto Rico sort of around the early 2000s for reasons, I guess, the dawn of the Internet age. But it's only prosecuted here. And even in the island state of Hawaii, there's no intrastate Hawaii transportation. It just, it belies common sense and congressional, that Congress would intend this absurd result only here for the 3.2 million people living in Puerto Rico. Thank you. Thank you both. We'll take a five-minute recess. All rise. Thank you.